## Commonwealth v. Nailor, Appellant, (No. 2).

*Criminal law—Indictment—Distinct counts—Practice, Q. S.*

When an indictment contains more than one count each count forms a distinct indictment though the counts are signed collectively by the district attorney. If each count is in form a complete indictment, signed by the district attorney, the instrument is in law an indictment containing two counts.

Where each of two counts is in form a complete indictment signed by the district attorney, and the two papers are fastened together with brass rivets under one cover, they may be considered as a single indictment containing two counts.

When a written instrument is contained on two or more sheets, it may be necessary that these should be fastened together to show their relation. The manner in which this is done is not material; it is sufficient that they are so attached to each other as to show that they are parts of one instrument.

*Criminal law—Indictment—Dates—Perjury.*

The date in an indictment charging an offense must not be uncertain, and two dates must not be laid for an offense completed on a single day.

Where an indictment for perjury charges that a coroner's inquest was held on a day named at which the defendant was sworn and examined, and that an adjournment of the inquest was held on a later day mentioned when the defendant was further examined, and that the defendant "then and there" falsely swore and testified, the indictment is fatally defective.

*Criminal law—Indictment—Statutory offense—Practice, Q. S.—Perjury.*

When a statute describes, defines or creates an offense, and fixes a penalty, the indictment must charge the offense, substantially in the statutory language.

An indictment for perjury which, after negativing the truth of the defendant's testimony avers that she well knew that it was "false, perjured and corrupt, contrary to the form of the act of the general assembly," but fails to aver that the defendant in the manner and form aforesaid, then and there willfully and corruptly did commit willful and corrupt perjury, is fatally defective, inasmuch as the charge is no offense, either at common law, or under the Act of May 31, 1860, sec. 14, P. L. 382.

*Criminal law—Indictment—Date—Perjury.*

An indictment for perjury charging the date of the offense as prioi to the finding of the indictment, subsequent to the statute describing the offense, and within the period of the statute of limitations, is well laid, although the date alleged is subsequent to the complaint and hearing on which the count is based.

*Criminal law—Perjury—Trial—Abortion.*

A defendant may be tried for perjury pending another indictment for abortion, where it appears that the false testimony was given at a coroner's inquest, but that the proceedings for perjury were not commenced by the commitment of the defendant by the coroner, on a verdict charging her

with having caused the death under investigation, but were commenced some days afterwards as a totally distinct proceeding.

*Issue on coroner's inquest.*

On a coroner's inquest the issue is whether the death was caused by unlawful means.

*Criminal law—Perjury—Coroner's inquest—Materiality of testimony.*

It is the duty of a coroner to hold an inquest super visum corporis when there is reasonable ground to believe that death was caused by unlawful violence or other undue means. Should the evidence before him fail to show such cause of death, his jurisdiction in the premises is not thereby ousted, yet, upon a charge of perjury on the part of a witness, the materiality of the testimony which is the subject of the charge remains to be considered. To sustain the charge of perjury, the testimony must be not only false, but material to the issue.

When it is shown at a coroner's inquest that death was not due to unlawful means, evidence relating to some act which in no way contributed to the death is not material to the inquiry, and testimony on such a point lacks the materiality which is an essential ingredient to perjury.

Argued May 9, 1905. Appeal, No. 244, April T., 1905, by defendant, from judgment of Q. S. Butler Co., June T. 1904, No. 28, on verdict of guilty in case of Commonwealth v. Lizzie Nailor. Before BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Indictment for perjury. Before GALBREATH, P. J.

From the record it appeared that the defendant moved to quash the indictment.

1. Because the bill of indictment is not based upon the information made before the committing magistrate and warrant issued in pursuance thereof, to-wit: April 22, 1904, upon which defendant was arrested and after hearing gave bail for appearance to court, in that the record shows the information was made and warrant issued April 22, 1904, charging the perjury to have been committed on April 8, 1904, and indictment charges the offense to have been committed on April 22, 1904, being a separate and distinct offense for which defendant was never arrested nor preliminary hearing awarded.

2. Because the bill of indictment purports to have been based upon an information made April 28, 1904, for which no warrant was ever issued by the committing magistrate, arrest made or any preliminary hearing held or awarded and is, therefore, invalid.

3. Because the record and bill of indictment shows that no warrant was issued or arrest ever made for the alleged crime set forth in the bill, the county detective having made a second complaint six days after the plaintiff's arrest for the alleged crime set forth in the indictment, but no warrant was ever issued or arrest made pursuant to said complaint made April 28, 1904, being six days after defendant's arrest.

4. Because two separate and distinct charges of perjury are set forth in the bill of indictment to-wit: the one alleged to have been committed on April 22, 1904, and the other on June 6, 1904. And neither of which is based upon an information made before the committing magistrate. The only information upon which the warrant was issued and arrest made being dated April 22, 1904, charging the offense to have been committed April 8, 1904.

5. Because what purports to be a bill of indictment is vague, uncertain and indefinite, in that it does not sufficiently inform the defendant of the nature and cause of the accusation against her, nor does not show upon its face that the witnesses were sworn before the grand jury, nor that a true bill was found, there being indorsed on the cover of the indictment proper the names of witnesses and "a true bill" indorsed thereon by the foreman, said cover being pinned to the indictment. But what purports to be a bill of indictment is in truth and in fact two separate and independent indictments, charging different dates and both signed by the district attorney, and returned by the foreman to the court as one bill. No indorsement of the witnesses' names or prosecutor's appears on either of the bills. The only declaration that witnesses were called by the grand jury and sworn is the indorsement on the said cover of said indictments of eight witnesses.

6. Because the indictment does not show on its face that the defendant was sworn in a judicial proceeding, nor that the testimony was material to that issue. Nor does it sufficiently set forth the character of the issue nor the purpose of the inquisition, and the bill therefore is bad for duplicity and uncertainty. Nor can perjury be maintained upon incompetent testimony.

7. Because the defendant is indicted for performing an abortion on Annie Phillips which was the subject of inquiry

278 COMMONWEALTH *v.* NAILOR, Appellant (NO. 2).

Statement of Facts—Opinion of the Court. [29 Pa. Superior Ct.

before the coroner's inquest which bill is still pending and undetermined.

The court overruled the motion to quash. [1]

At the trial the jury returned a verdict of guilty upon which judgment of sentence was passed.

*Error assigned* among others was in overruling motion to quash the indictment.

*Lev McQuistion* and *Everett Ralston,* with them *A. T. Scott,* for appellant.—The indictment should state specifically the time and place of offense. In an indictment for perjury the day on which the offense is committed must be precisely stated: U. S. v. Bowman, 2 Wash. C. C. Rep. 328; U. S. v. McNeal, 1 Gallison, 387.

The court erred in refusing to quash the bill, because it did not show on its face that the testimony before the coroner was material to the inquiry pending: County of Lancaster v. Mishler, 100 Pa. 624; Com. v. Wood, 2 Pa. Dist. Rep. 823; Com. v. Ludwig, 19 Lanc. Law Rev. 147; Com. v. Jermon, 29 Legal Int. 165; Com. v. Wilson, 11 Lanc. Bar, 114; Com. v. Rupple, 1 Pa. C. C. Rep. 663; Com. v. Kuntz, 2 Clark, 375.

*John R. Henninger,* for appellee.

OPINION BY SMITH, J., October 23, 1905 :

When an indictment contains more than one count, each count forms a distinct indictment, though the counts are signed collectively by the district attorney. Here each count is in form a complete indictment, signed by the district attorney. But the legal effect of this joinder is not changed by the form of the counts, or by the district attorney's signature to each; the instrument remains in law an indictment containing two counts. And when a written instrument is contained on two or more sheets, it may be necessary that these should be fastened together to show their relation. The manner in which this is done is not material; it is sufficient that they are so attached to each other as to show that they are parts of one instrument. In the present case this has been done, and the action of the grand jury and the court has been on the connected

sheets as a single indictment. Hence the appellant's objections on this point are not well founded.

The legal rules relating to the date of the offense, as laid in an indictment, have been sufficiently stated in the preceding case, which was based on the same transaction from which the indictment in the present case arose. One of these rules is that the date must not be uncertain, and that two dates must not be laid for an offense completed on a single day. Tested by this rule, the first count of the indictment before us is fatally defective. In its essential points, it avers the holding of a coroner's inquest on April 7, 1904, in which the defendant was among the witnesses sworn and examined; an adjournment of the inquest to April 22, when the defendant was further examined; it then sets forth the matters which it was material for the inquest to know; and follows with the averment, "That the said Lizzie Nailor, sworn as aforesaid, did then and there unlawfully, willfully, corruptly and falsely swear and testify" to the matters assigned as perjury. Here are two dates, to which, in the structure of the indictment, the words "then and there," as the time and place of the offense, equally apply; hence the date to which they refer is wholly uncertain. If they may be understood as referring to both, the result is a charge of the same offense on each day, and is, in effect, duplicity, as charging two offenses in one count. A further defect appears, which is of itself fatal. It is a settled principle that when a statute describes, defines, or creates an offense, and fixes a penalty, the indictment must charge the offense, substantially, in the statutory language. Section 14 of the penal code of March 31, 1860, P. L. 382, provides that "If any person shall willfully and corruptly commit willful and corrupt perjury," the penalty therein prescribed shall be imposed. Here the count under consideration, after negativing the truth of the defendant's testimony, avers that she well knew that it was "false, perjured and corrupt, contrary to the form of the act of the general assembly," etc., but fails to aver that the defendant, in manner and form aforesaid, then and there willfully and corruptly did commit willful and corrupt perjury. It charges no offense, either at common law or under the statute. As to this count, therefore, the judgment cannot be sustained.

In the second count, June 6, 1904, is laid as the date of the

offense charged. This is subsequent to the complaint and hearing on which the count is based. Yet being prior to the finding of the indictment, subsequent to the statute describing the offense and fixing the penalty, and within the period prescribed by the statute of limitations, it is well laid, according to the principles referred to in the preceding case.

The contention that the defendant cannot legally be tried for the perjury charged, pending the indictment for abortion, cannot, under the circumstances, be sustained. The rule that the proceeding in which, it is charged, the perjury was committed, must be ended before the accused can be tried for perjury, so far as it applies to the case in hand, supports the commonwealth's contention in the premises. While the present indictment grew out of the coroner's inquest, its relation to that proceeding is not such as to bring it within the established rule. The present prosecution was not commenced until after the inquest had ended, and is a totally distinct proceeding. Had it been commenced by the commitment of the defendant by the coroner, on a verdict charging her with having caused the death under investigation, a different question would be presented.

It is the duty of a coroner to hold an inquest super visum corporis when there is reasonable ground to believe that death was caused by unlawful violence or other undue means. Should the evidence before him fail to show such cause of death, his jurisdiction in the premises is not thereby ousted, yet, upon a charge of perjury on the part of a witness, the materiality of the testimony which is the subject of the charge remains to be considered. To sustain the charge of perjury, the testimony must be not only false, but material to the issue. Among the cases illustrating this point are Crookshank v. Gray, 20 Johns. 344; Ross v. Rouse, 1 Wend. 475; Power v. Price, 12 Wend. 500; Power v. Price, 16 Wend. 450; Com. v. Pollard, 53 Mass. 225; Com. v. Grant, 116 Mass. 17. On a coroner's inquest, the issue is whether the death was caused by unlawful means. Evidence, either direct or circumstantial, tending to show that it was thus caused, is material, and so, also, is evidence in contradiction of this. But when it is shown that death was not due to such means, evidence relating to some act which in no way contributed to it is not material to the inquiry, and testimony

on such a point lacks the materiality which is an essential ingredient of perjury. The case in hand presents a striking illustration. The inquest was held upon suspicion that death was the consequence of a miscarriage, unlawfully produced. The only operation shown to have been performed on the deceased was a not uncommon one for the replacement of a displaced uterus, and the evidence shows no relation between this and the death of the patient four months later. The testimony on this point was wholly immaterial, since it failed to support or contradict the view that death resulted from a criminal operation. If, indeed, the testimony of the accused had been the only evidence on which this conclusion rested, the question of its materiality would present a different aspect. But it was fully sustained by the medical testimony produced by the commonwealth, and on the trial it was expressly admitted by the commonwealth "that the operation was not a criminal operation, and a perfectly proper one." By this admission, and the evidence on which it was based, the question of death from unlawful means was eliminated from the case. Testimony in denial of an operation admittedly proper, and without bearing on the cause of death, was wholly immaterial to the purpose of the inquest,— as much so as if it had related to the reduction of a dislocation, or the paring of the finger nails. The matter in issue before the coroner was apparently obscured by the form of the question put to the witness. This related to "an operation," a term of indefinite scope, ranging, technically, from the extraction of a splinter with an instrument of any kind to an amputation, or the removal of a malignant growth, or of a fetus. It does not appear how the defendant understood the word, or how the coroner intended it to be understood. If she understood it as meaning a miscarriage, her denial that there was an operation was corroborated by the medical testimony on the part of the commonwealth showing that there was no miscarriage. If she understood it otherwise, her testimony respecting it was immaterial, since there was no evidence that death was due to any operation.

In this view of the controlling features of the case, the defendant's testimony in denial of declarations alleged to have been made by her is immaterial. Further than this, the evidence in contradiction lacks the weight and certainty requisite

to convict, even in the absence of the direct evidence in disproof of death by unlawful means.

There are some unusual features connected with the two prosecutions of the defendant in this case, which we may properly notice. Though not formally accused before the coroner, her examination was obviously conducted on the theory that she was guilty of having taken part in a criminal operation, and aimed at obtaining admissions criminating herself. If such a course is to be permitted, it should certainly be with the caution that the witness is not legally required to make such admissions. The only caution that appears to have been given the witness was a notice, by the district attorney, that "if she didn't tell the truth there was ten years waiting for her." The prosecution of the defendant, on both charges, appears marked by peculiar rancor. Though, on the trial for perjury, the commonwealth admitted that the operation in the case was not criminal, but perfectly proper, in the subsequent trial for abortion, on substantially the same evidence, it pressed for the conviction of the defendant for aiding in this operation, as a criminal abortion. And while the defendant has been convicted of both the offenses charged, the professional operators in the affair—the principal culprits if, as the commonwealth insisted, an abortion had been committed,—have been allowed to escape prosecution.

Judgment reversed and defendant discharged from her recognizance.